UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT PATRICK CAMERON,

            Plaintiff,            Civil Action No. 20-10119
                                        Honorable Nancy G. Edmunds
v.                                          Magistrate Judge David R. Grand

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 11)**

Plaintiff Scott Patrick Cameron ("Cameron") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 11), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, this Court finds that the Administrative Law Judge's ("ALJ") conclusion that Cameron was not disabled under the Act during the relevant period is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 11**) be **DENIED**, Cameron's Motion for Summary Judgment (**ECF No. 10**) be **GRANTED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Recommendation.

**II.  REPORT**

    **A.  Background**

Cameron was 30 years old at the time of his alleged onset date of February 10, 2010, and at 5'8" tall weighed approximately 145 pounds during the relevant time. (Tr. 81). He is a college graduate with a degree in business administration. (Tr. 51). Cameron's alleged disabling conditions include a lumbar spine impairment, two spinal fusions, nerve damage and sciatica. (Tr. 81).

Cameron first applied for benefits on October 16, 2015. (Tr. 103). That application was denied. (*Id.*). ALJ Paul Sher held an administrative hearing on July 17, 2017. (*Id.*). Cameron, who was represented by attorney Michael Korby, testified at the hearing, as did Vocational Expert ("VE") Mary Everts. (*Id.*). On November 1, 2017, ALJ Sher issued a written decision finding Cameron disabled, but only for the period from February 1, 2010 through July 15, 2013. (Tr. 103). Cameron appealed, and the Office of Disability Operations protested the decision on its own motion, but for a very different reason than the one Cameron advanced. (Tr. 121-123). Whereas Cameron challenged the ALJ's determination that his condition improved after July 15, 2013, the Office of Disability Operations argued that under 20 C.F.R. § 404.131(b), Cameron was "not entitled to disability insurance benefits because his disability ended on July 16, 2013, more than 17 months before he filed his application on October 16, 2015." (Tr. 121-22, 432-36).

The Appeals Council found merit in both arguments. First, the Appeals Council noted that if it simply accepted the ALJ's decision as written, Cameron would not be entitled to benefits:

> To become entitled to disability insurance benefits, the claimant must have disability insured status in the first full month that he is disabled, or if later, on the 17th month (if there is a required waiting period as described in 404.315(d)) before the month in which he files an application for disability insurance benefits; or the 12th month (if he does not have to serve a waiting period) before the month in which he files an application for disability

> insurance benefits (20 C.F.R. 404.131(b)). Under these rules, the claimant would not be entitled to disability insurance benefits because his disability ended on July 16, 2013, more than 17 months before he filed his application on October 16, 2015. Thus, ***as written***, even with the finding of a closed period of disability from February 1, 2010 to July 15, 2013, the hearing decision would not result in any entitlement to Title II benefits for the claimant.

(Tr. 121-22) (emphasis added).

But, far from determining that Cameron was not entitled to an award of benefits, the Appeals Council vacated the ALJ's decision and remanded the case, explaining that the ALJ's findings of Cameron's purported medical improvement were "undermined" by the record:

> Worsening pain levels were documented in 2015 and 2016 [], and in February 2017, [Cameron] returned to his orthopedist reporting pain, eventually leading to a diagnosis of failed back syndrome []. Thus, the record documents improvement then worsening of [Cameron's] back impairments during the period adjudicated by the Administrative Law Judge, which undermines the medical improvement findings during the period on and after July 16, 2013. Further consideration of whether [Cameron's] disability ended or continues after July 16, 2013, and whether he became disabled again during a period covered by his October 2015 application is necessary.

(Tr. 122).

The Appeals Council thus remanded the case back to ALJ Sher, who held another hearing on August 6, 2019. (Tr. 44-80). Cameron, who was again represented by attorney Michael Korby, testified, as did VE Amy Foster. (*Id.*). On September 4, 2019, ALJ Sher issued a second written decision. (Tr. 14-31). However, this time, ALJ Sher wrote that, "upon further consideration of the entire record . . . [Cameron] was not disabled *at any time* from the alleged disability onset date through the date last insured . . ." (Tr. 29) (emphasis added). Thus, instead of considering, at least in any meaningful detail, the issues and evidence highlighted by the Appeals Council, the ALJ wrote that "any further statements from medical sources issued after the date last insured" and any "additional records dated from 2016 through 2018" "would be a moot point" and/or "of limited

3

probative value." (Tr. 28). On November 15, 2019, the Appeals Council denied review. (Tr. 1-3). Cameron timely filed for judicial review of the final decision on January 16, 2020. (ECF No. 1.)

The Court has thoroughly reviewed the transcript, including Cameron's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.  The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Cameron was not disabled under the Act. (Tr. 17-31). At Step One, the ALJ found that Cameron "did not engage in substantial gainful activity during the period from his alleged onset date of February 1, 2010 through his date last insured of December 31, 2014[.]" (Tr. 20). At Step Two, the ALJ found that Cameron had the following severe impairments: "degenerative disc disease of the lumbar spine at L4-S1." (*Id.*). At Step Three, the ALJ found that Cameron's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*). The ALJ then assessed Cameron's residual functional capacity ("RFC"), concluding that:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 414.1567(a), except: occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance and stoop, never kneel, crouch or crawl. Avoid concentrated exposure to vibration, avoid concentrated exposure to fumes, odors, dusts, etc., avoid all exposure to hazards; can alternate between sitting and standing at will so long as not more than 15% off task.

(Tr. 21).

At Step Four, the ALJ found that Cameron was unable to perform his past relevant work as a construction worker. (Tr. 29-30). At Step Five, the ALJ determined, based in part on

testimony provided by the VE in response to hypothetical questions, that Cameron could perform the jobs of sorter (19,000 jobs nationally), final assembler (17,000 jobs nationally), and document preparer (125,000 jobs nationally). (Tr. 31). As a result, the ALJ concluded that Cameron was not disabled under the Act prior to his date last insured. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*,

167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D. Analysis

In his motion for summary judgment, Cameron argues that the ALJ's RFC is not supported by substantial evidence. (ECF No. 10, PageID.1096.)  Specifically, Cameron argues that the ALJ's reasoning for giving "little weight" to the opinion of his treating physician – Joel R. Schechet, M.D. – is not supported by substantial evidence. (*Id.*, PageID.1097.)  In support of this argument, Cameron alleges that the ALJ erred in discounting Dr. Schechet's opinion due to the fact that it (1) "was issued almost a year after the date last insured"; (2) was based on subjective reports from Cameron; and (3) was "not consistent with or supported by the other evidence of the record." (*Id.* at PageID.1098-1103.)  Cameron also argues that the ALJ erred by failing "to explain how [his] condition had materially changed since the 2017 decision." (*Id.*, PageID.1103.)

The Commissioner counters that the "ALJ supportably gave little weight to Dr. Schechet's opinion because it was not well supported or consistent with the other evidence of record." (ECF No. 11, PageID.1111.)  The Commissioner highlights the 2013 post-surgery letters from Cameron's second surgeon – Dr. Mick Perez-Cruet – stating that Cameron was "doing well" and that his pain was "markedly improved." (*Id.*, PageID.1114-1115.)  The Commissioner also notes that "[Cameron] does not cite any authority that requires the ALJ to explain how [his] condition changed since the ALJ's prior decision." (*Id.*, PageID.1119.)

7

Having reviewed the lengthy transcript in this matter, the undersigned cannot conclude that the ALJ's decision is supported by substantial evidence. Most significantly, the ALJ failed to meaningfully weigh substantial evidence in the record of Cameron's continued pain and impairments after his second surgery that appears to support Dr. Schechet's opinion. As such, the resulting RFC is not supported by substantial evidence.

A claimant's RFC is defined as "the maximum degree to which he retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).[1] "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The ALJ must also take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Moreover, an RFC is not supported by "substantial evidence" if it is the product of a selective discussion of the evidence that does not adequately demonstrate that the ALJ fairly weighed the competing record evidence. "'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Trudell ex. rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D.

---

[1] *See also*, Social Security Ruling 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

8

Mich. 2001) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). *See also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record.").

In addition, the treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).[2] "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)). Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p,

---

[2] This case law and these regulations apply to Cameron's claims because he filed for benefits before March 27, 2017. *See* 20 C.F.R. §§ 404.1527c, 404.1527.

1996 WL 374188, at *5 (July 2, 1996)).

Here, the ALJ found that Cameron had the RFC to perform sedentary work with the following limitations:

> [O]ccasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance and stoop, never kneel, crouch or crawl. Avoid concentrated exposure to vibration, avoid concentrated exposure to fumes, odors, dusts, etc., avoid all exposure to hazards; can alternate between sitting and standing at will so long as not more than 15% off task.

(Tr. 21). For the reasons stated below, the Court finds that this RFC is not supported by substantial evidence.

First, the ALJ gave "little weight" to the opinion of Dr. Schechet – Cameron's treating physician – set forth in a November 5, 2015 letter regarding Cameron's impairments. (Tr. 27). This letter, addressed to Cameron, stated in whole:

> I am writing this letter on behalf of your disability application. I support total disability.
>
> I saw you initially in October 2012. At that time, you presented with severe low back pain and lower extremity pain. You had had prior surgery with Dr. Fischgrund including an instrumented fusion at L5-S1. Since then I have been seeing you on a regular basis for both medication and injection management of your pain. Although I think we have helped you to some extent, you have been in severe pain throughout the entire time I have been seeing you. Ultimately, you had to undergo a second lumbar instrumented fusion at L4-L5. Although this helped you somewhat, you are still on chronic pain medication including opiates. ***Due to your severe pain, you are unable to maintain any position other than recumbent or sitting with your feet up on a chair or ottoman.*** You are unable to reach or bend or stoop except on a very limited basis. ***Due to chronic opiates and other medication, you are unable to concentrate fully and it has clouded your mental processes to an extent.*** I don't think there is a whole lot more I can do for your pain at this point and a third surgical procedure does not seem to be an option although I leave that up to you and your spine surgeons.
>
> I recommend total disability for Mr. Cameron. If anyone who is reading this letter needs to speak with me, please do not hesitate to call.

(Tr. 772) (emphasis added).

The ALJ gave little weight to this letter for the following reasons:

> First, it was issued almost a year after the date last insured. Secondly, it appears to have been based upon the claimant's own report of his symptoms and limitations (see 12F/41). Moreover, it is inconsistent with claimant's statements to Dr. Schechet that his pain was generally only 2 or 3 on a scale of 10 following his second surgery (11F/17-21), and his statements to his surgeon that he was doing well. (10F/20, 22, 23). The claimant also indicated his mental side effects improved when he was tapered off Neurontin by Dr. Schechet in 2013 (11F/15).

(Tr. 27-28).

The Court recognizes that "the determination as to whether the claimant is disabled is reserved for the Commissioner," and it has no quarrel with the ALJ not crediting Dr. Schechet's ultimate recommendation of "total disability" for Cameron. *See* 20 § C.F.R. 416.927(d). However, while a physician – treating or otherwise – cannot make the ultimate determination regarding disability, an ALJ still must fairly weigh that doctor's treatment and examination notes and other record evidence in arriving at the claimant's RFC. As it relates to Dr. Schechet, the ALJ erred in this respect.

1. *Relation Back to Cameron's Condition Prior to the Date Last Insured*

"Post expiration evidence must relate back to the claimant's condition prior to the expiration of [his] date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). As indicated in Dr. Schechet's letter, and as supported by the medical evidence, Dr. Schechet treated Cameron from October of 2012 through, at least, November 5, 2015. (Tr. 685-725, 772-785). Indeed, Dr. Schechet specifically indicated in his letter that Cameron suffered from his conditions "throughout the entire time" of their treating relationship. As such, the mere fact that Dr. Schechet's opinion post-dates Cameron's date last insured was not a legitimate basis for the ALJ to have discounted Dr. Schechet's opinions about Cameron's condition during the relevant period. *Wirth, supra.*

11

  2. *Subjective Reports*

The ALJ's second basis for discounting Dr. Schechet's opinion is that "it appears to have been based upon [Cameron's] own report of his symptoms and limitations[.]" (Tr. 27-28). However, in making this assertion, the ALJ references only a single page of the lengthy transcript, and ignores that Dr. Schechet was obviously familiar with Cameron's significant long-standing back issues that led to him having not one, but two significant back surgeries in which "bolts and screws" were "placed" in the initial L5-S1 fusion surgery in February 2010, and then removed and replaced during the second surgery in February 2013. (Tr. 672-77, 694). The medical records unquestionably document serious objective findings establishing Cameron's surgical needs, including that even after the first surgery he was suffering from left and right annular tears at L4-5 and a disc herniation. (Tr. 680). Moreover, the ALJ failed to recognize that Cameron regularly saw Dr. Schechet over a period of years, and that the doctor was able to observe Cameron and how he responded to the various prescribed courses of treatment. (Tr. 685-725, 772-785). The records also show that Dr. Schechet had the most comprehensive information regarding Cameron's condition, and, as a pain specialist, his pain. (*Id.*).

  3. *The ALJ's Assertion that Cameron Reported to Dr. Schechet that "His Pain was Generally Only 2 or 3 on a Scale of 10 Following His Second Surgery" and the ALJ's Characterization of Cameron's Reports to His Second Surgeon Are Not Supported by Substantial Evidence*

The ALJ also discounted Dr. Schechet's opinion based on his finding that Cameron reported that "his pain was generally only 2 or 3 on a scale of 10 following his second surgery" and because Cameron had reported to his surgeon that he was "doing well" following the second surgery. (Tr. 27-28). Neither of these findings is supported by substantial evidence, and they do not meaningfully address the most salient question of Cameron's ability to perform sustained full-time work during the periods in question.

12

Some history of the case is helpful to understanding the issue. Cameron had been working in a manual labor job, and injured himself while trying to bend a pipe at work. He continued to try to work for about two more years, ultimately opting for a fusion surgery in 2010. Cameron still experienced significant pain, however, and on October 12, 2012, Dr. Schechet recommended that Cameron stop doing any activity through January 7, 2013, due to his back. (Tr. 685-86). Cameron then consulted with Dr. Mick Perez-Cruet, M.D. regarding a second back surgery on December 3, 2012, and agreed to undergo the surgery. (Tr. 618-19). On January 11, 2013, Dr. Schechet gave Cameron an epidural steroid injection for pain. (Tr. 697). On February 21, 2013, Dr. Perez-Cruet performed the second surgery. (Tr. 587). As noted, this was an extremely invasive surgery, with Dr. Perez-Cruet removing and replacing Cameron's three-year old hardware.

While the ALJ found that, following the second surgery, Cameron reported to Dr. Schechet that "his pain was generally only 2 or 3 on a scale of 10 following his second surgery" and that Cameron reported to Dr. Perez-Cruet that he was "doing well," neither finding is supported by substantial evidence.

Although the surgery initially seemed to help, less than three months later, on May 2, 2013, Cameron went to the emergency room at Beaumont Hospital in Royal Oak complaining of "severe" and "excruciating" back pain "when he uses the commode and attempts to bear weight . . . pain is worst upon any change in position."[3] (Tr. 627, 740-41). He was admitted and received a neurology consult that resulted in him restarting many medications, including Vicodin and Flexeril. (Tr. 639, 744). It also led to another MRI of his back. (Tr. 649, 744). Cameron continued to treat at Beaumont until he returned to see Dr. Schechet on May 23, 2013. (Tr. 692-700).

---

[3] The Court notes that the sit/stand option incorporated into Cameron's RFC by the ALJ would seem to exacerbate Cameron's pain. Yet, this was not discussed by the ALJ.

13

At a July 19, 2013 follow-up appointment, Dr. Perez-Cruet reported to Cameron's primary care physician that Cameron was "feeling great" and had "significant reduction in his back pain." (Tr. 611). The ALJ relied on this note to support his discounting of Dr. Schechet's opinion. (Tr. 21). However, at most, this only told half the story of Cameron's situation. Indeed, on the very visit where Dr. Perez-Cruet reported that Cameron had been doing well, notes of the appointment reflect that Cameron reported experiencing "extreme" pain when he lays on his stomach and that his "right leg gets worse with activity, bottom foot pain gets worse with activity, lower back pain gets worse with activity, [and he has] muscle spasms mostly [in his] right leg." (Tr. 599).

The ALJ's finding that Cameron reported "his pain was generally only 2 or 3 on a scale of 10 following his second surgery" finds even less support in the record. On May 23, 2013, Cameron reported back pain as high as 5/10. (Tr. 700). On June 18, 2013, Cameron reported experiencing pain as high as 10/10. (Tr. 701). And, on July 9, 2013, Cameron again reported pain that varied between a 4/10 at rest and 9/10 when it spiked, which occurred whenever his core was not "tight." (Tr. 821). Thus, while the ALJ's decision gives the impression that the second fusion surgery controlled Cameron's pain sufficiently such that he could work a full-time job until at least July 15, 2013 – the last date for which the ALJ had previously found Cameron was disabled – in reality, Cameron was regularly seeing his doctors and reporting being in a significant amount of pain. This is consistent with following explanation by Cameron at his hearing:

> Q. All right, I mean, if you remember, how quickly after that second surgery did it start to get bad again?
>
> A. It was all kind of taken out of context. I was doing a little better, but I didn't get better, and I didn't get worse. I never like re-injured it. I kind of had hopeful thinking that I was going to – because, the surgical pain is pretty bad when you get a fusion. So, every day you do feel a little better getting over that surgical pain, but it wasn't like I was better. You know what I mean? And, I did try limiting my medication, mainly because the medication just made me so sick. But, I wasn't better.

(Tr. 72).

In short, the ALJ's assertion that Cameron's "statements to Dr. Schechet that his pain was generally only 2 or 3 on a scale of 10 following his second surgery" is not a valid reason for giving little weight to the doctor's opinion.[4]

4. *The ALJ's Self-Reversal Impacted the Overall Decision*

The ALJ's reversal of course – now finding that even up to July 15, 2013, Cameron was not disabled – impacted the balance of his analysis, including as to portions of the record that the Appeals Council had instructed him to consider. (Tr. 122). The ALJ wrote, "[a]s [Cameron] is not found to have [been] disabled prior to his date last insured . . . any further statements from medical sources issued after the date last insured" and any "additional records dated from 2016 through 2018" "would be a moot point" and/or "of limited probative value." (Tr. 28).

Cameron reported "constant" 3/10 pain on March 28, 2014. (Tr. 703). On November 7, 2014, Cameron reported increasing pain levels, this time at 4/10, and his hydrocodone dosage was increased from 7.5 mg to 10.0 mg. (Tr. 708). On January 8, 2015, although Cameron reported pain of 2-3/10[5] with medication, it was otherwise as high as 9/10. (Tr. 710). On March 16, 2015, Cameron reported pain of only 3/10, but he characterized it as "constant, sharp, throbbing,

---

[4] The ALJ's analysis also fails to take into account Cameron's candid testimony that, to him, a "3" out of 10 was still "real aggravating pain" that would "definitely" interfere with whatever he was doing, and that his refusal to exaggerate along the 0-10 scale did not mean he was not experiencing serious levels of pain. (Tr. 64). To that end, the Court notes that Cameron had been prescribed increasingly strong and more doses per day of pain relief medications. The ALJ also did not meaningfully consider the length of the treatment relationship between Dr. Schechet and Cameron, nor the frequency of examination, when weighing Dr. Schechet's opinion, as required. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[5] Even when Cameron's pain was at this level, the medication that helped him achieve that relief caused him other difficulties. (Tr. 63) ("But, that's with shots, and on Norco. And, I'm telling you, that medication makes me so ill, that I can barely even function taking the stuff.").

15

aching[,] locking[,] and shooting," and the number of daily hydrocodone pills he was prescribed increased. (Tr. 712). Over the next few months, Cameron reported "constant" pain, consistently increasing in severity from 3/10 in April 2015, to 4/10 in May 2015, to 5-6/10 in September 2015, to 6/10 in November 2015. (Tr. 714, 716, 722, 764). About a year later, Jane Beimer M.D. diagnosed Cameron with "failed back syndrome" and noted that she did not believe his prognosis was favorable for significant improvement. (Tr. 788-90). Given the ALJ's dubious discounting of Dr. Schechet's opinion, his characterization of much of this evidence as "a moot point" and "of limited probative value" is erroneous.

Moreover, although Cameron's second surgery provided him with some short-term relief, the ALJ's decision minimizes the fact that Cameron was injured while working, that he underwent two significant invasive back surgeries over a three-year period (the second one for the express purpose of Cameron trying to "return to work" (Tr. 604)), and that throughout the entire period before the Court, he was constantly seeking treatment for his back pain, which continued to worsen until he was ultimately diagnosed with failed back syndrome. Meaningful review of the record evidence means analyzing it in context, not in a vacuum. Without a more even weighing of the matters addressed herein, and how they bear on Cameron's ability to have performed sustained full-time work during the specific time periods in question, the Court cannot say that the ALJ's decision is supported by substantial evidence. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013); *Roberts v. Colvin*, No. 13-14675, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions") (quoting *Wilcox v. Comm'r of Soc. Sec.*, No. 13-12549, 2014 WL 4109921, at *7 (E.D. Mich. Aug.19, 2014)); *Trudell*, 130 F. Supp. 2d at 895 ("the

substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"); *Brooks*, 531 F. App'x at 640-41.

     5.    *The ALJ's Handling of Dr. Venema's Opinion is Not Supported by Substantial Evidence*

Finally, the Court turns to the one opinion that the ALJ gave "significant weight" – that of the state agency medical consultant – Dr. William Venema. (Tr. 28, 81-97). Opinions from non-examining state agency consultants "may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 12-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)). Indeed, "'[i]n appropriate circumstances, opinions from State agency medical and psychological consultants … may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks*, 531 F. App'x at 642 (6th Cir. 2013) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). "One such instance is where the 'State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than was available to the individual's treating source." *Id*.

Here, the reason articulated by the ALJ for crediting the opinion of Dr. Venema over Dr. Schechet is not supported by substantial evidence. (Tr. 28). The ALJ wrote that he was affording Dr. Venema's opinion significant weight because "[i]t is consistent with the ability to perform a range of sedentary work, reduced by postural and environmental limitations, and the option to sit or stand while working." (*Id*.) But that is circular logic which does nothing more than beg the question of whether either the opinion or the RFC accurately reflect Cameron's ability to perform full-time work on an ongoing basis during the relevant time periods.

### III.  CONCLUSION

For the reasons set forth above, the Administrative Law Judge's conclusion that Cameron was not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 11**) be **DENIED**, Cameron's Motion for Summary Judgment (**ECF No. 10**) be **GRANTED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Recommendation.

Dated: December 23, 2020                               s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                       United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2020.

                    s/Eddrey O. Butts
                    EDDREY O. BUTTS
                    Case Manager